And, Your Honor, I'd just like to note I'd like to reserve one minute in rebuttal time. The clock is counting down. Your Honor, may it please the Court, my name is Roger Green. I'm counsel for a petitioner. I seek review, we seek review of the Board's August 7, 2012, denial. The denial by the Board of Immigration Appeals contains numerous errors. Primarily, it fails to fully analyze the claim. In particular, the Board, in its denial decision, notes that family can be a social group, but yet never fully analyzes this family petitioner's positive claim in its analysis. Instead, in its analysis, it changes it, recognizing that family is a social group, but yet saying this. Well, our case law says that a family can be a social group. It doesn't say that every family is a social group. That's right, Your Honor. So what is in the record that supports your argument that this was a social group under our case law? Well, Your Honor. That this particular family constituted a social group. We believe, within his testimony as well as within the asylum application itself, he fully testified that these were the same members. These were people that lived in the house. The basis of the beleaguered family, the antagonistic family against them, was because they wrongfully believed that petitioner's family somehow was the cause of that member's death. Well, was this a particularly renowned or prominent family in the area or in the community or in the State or in the city? Not to my knowledge, Your Honor. But they did live fairly close by, and they did know of each other. They did know each other before the death of the antagonistic family. So let's assume, just for purposes of discussion, that the family is a protected group. What evidence is there in this record of either government acquiescence or persecution? In other words, what I'm having some difficulty finding here, I don't doubt for purposes of discussion that your client feared violence, retaliation, something at the hands of the other family if returned to Mexico. The question is, what evidence is there of government acquiescence in that? The government, they — And in particular, let me finish the question. I'm sorry, I stopped for a second. What evidence is there of difference? How had conditions changed since the time of the — this is a motion to reopen, after all. How had conditions changed? Well, in terms of — That's two questions. Take the first one. What's evidence there of government acquiescence? Well, it's our position that what the police did, they took some — They seemed to do something. They put an electric fence-like gate over the door. Why isn't that enough to show that the police were responsive? Well, they did. It shows they did some action. But as we see the antagonistic family's reaction to it, they shot. They continued to — they shot through the door. It's our position that the police action wasn't enough. But was there anything in the record to show that after you claim it wasn't enough, that they asked the police for more help and the police denied it? Is there any evidence of that in the record? Not to my knowledge. And when was the occasion that they shot through the door? Well, this was — this antagonism, this family feud, took place over the course of many years. Now, I understand, but this is a motion to reopen, so I'm trying to figure out what new appears in this motion to reopen. Well, it's not a motion to reopen, right? It's a direct appeal. It's a direct appeal. I'm sorry. My mistake. So tell me when they shot through the door. It — to the best of my knowledge, there's not a particular year, but when — Well, this is an occasion, right? They shoot — you say something happened. They put up this — they put up this electronic fence. Nonetheless, they thereafter shoot through the door. When did that occur? Yes, Your Honor. Well, I believe if we look at the administrative record, he states that they shot. I guess I'm trying to figure out what evidence there is of government inability to control or acquiescence from that point in time forward to the hearing. Well, it's based — viewed on a circumstantial basis, they — the family continued to insult and harass this petitioner's family even after that point in time. But on the changed country conditions, didn't you — it seems like you basically conceded before the immigration judge that nothing had changed regarding the family feud in Mexico. Well — So I'm struggling a little bit to find out how that is changed circumstance when you're arguing that there wasn't. Well, Your Honor, one of the — one of our arguments, again, which is why it's crucial that this Court finds that there was a failure to analyze fully the claim, is we believe that there was a past persecution. The past persecution component had been met, and I can get to that in a second. And it was based — it was on account of his membership. He was part of that family. It's also based on account of that. If he is — But let's just say — let's just say for purposes of argument that you don't quite meet that social group level. Your — the participation for that family doesn't meet the social group. What are the changed circumstances? Well, even within the initial trial before the immigration judge, petitioner did submit a letter that the family was still after him, that the family had — they had not reached a peace agreement. He had submitted a letter from his sister. He had also spoken with a friend, and they had told him that conditions in Mexico with that family had not changed. The other thing within changed country conditions is, since the time that he left the United States, the situation in Mexico has gotten an unprecedented level of violence. Well, what average time point, if you could show or talk about in the record, exists comparing the levels of the cartel violence in Mexico now with when Mr. Dominguez entered the United States? Well, for example, we submitted one article, and I believe this is among other documents from SFGATE, which discussed the drug cartel violence at an, quote-unquote, unprecedented — and I'm giving you a raw quote, so I believe I'm stating this accurately — an unprecedented level of violence in Mexico. And that's one recognition in a news article, and that article was dated, I believe, at the time of the hearing in 2010. Right. So let's go back, and I apologize for characterizing the motion to reopen, really dealing with a time bar here that you're trying to get over for asylum. So it's really sort of the same test of changed country circumstances. So help me again with respect to the Gonzalez family. What changed between now and then? In — well, as I believe I would note — I understand your argument with respect to gangs, that it's gotten worse. Tell me with respect to the Gonzalez family, what circumstances have changed between now and then? Well, it's — Because you've got a time bar you have to get past with respect to asylum. Yes, Your Honor. There's also the change in law. That's the other thing we're noting. We fully submitted a 28-J brief discussing the recent changes in law, both in determining a social group — Right. So I'm assuming you've got a social group. I'm assuming you've got a social group, you were persecuted because of a social group, but in order to get past the time bar, you've got to show changed circumstances, right? Yes, Your Honor. Tell me what they are. Well, Your Honor, well, we are saying that those changes, in addition to the change in the law, we're also saying the vehemence against — by this family has remained unchanged, and he's developed — Unchanged doesn't mean changed. That's my — and I'm sorry for my — for sort of my imprecision in asking the question. If circumstances have remained the same, then by definition they're not changed. So tell me how they've gotten worse. Well, in addition to — and this was the unexplored — a fully unexplored area. This was not fully explored by the board when they did a Delgado decision. We believe that the spiraling situation in Mexico has made things worse in the second positive group of returning Mexicanos. Right. I understand that argument. I'm focusing simply on the Gonzalez family now. So far as I can tell, you're really not alleging that things have changed at all. They were antagonistic when he left, and they're antagonistic now. Yes, but he's also developed. We believe that, you know, the case law, the rich body of case law that exists now, allows a look, a fresh look at the case. Well, the rich body of case law may make him a member of a protected group, of a social group. But tell me factually why he's in more danger now than he was when he left. Well, we believe that would be on any remand. We believe that that would be an evidentiary matter before the court. One argument that we also, if this court could consider, is that the past — with the past persecution component being met, if we believe that it's more than just physical, a cumulative assessment of the persecution can go beyond the physical, which we believe that the board is only looking at in their decision. Second, if a positive social group is found, and it's found to be that that persecution is on account of, then with a past persecution finding, a rebuttable presumption exists of well-founded fear of future persecution. Then it would be the government's burden to show beyond country conditions that — That would be your withholding claim. That would also be for the asylum. Get over the timer. So you'd solve a time bomb, wouldn't you? So you've — we let you exceed your time, so let's hear from the other side, and I'll give you a minute for rebuttal. Thank you, Your Honor. May it please the Court, Jonathan Robbins here on behalf of the Attorney General. Good morning, Your Honors. So I think Your Honors have pretty much hit the nail on the head with respect to the untimely asylum application, that Petitioner didn't establish changed circumstances relating to the problem that he's facing with the Gonzalez family. They haven't even really alleged that there are any changed circumstances. Your Honor noted that they were antagonistic then, they're antagonistic now. So the board's decision and the immigration judge's decision finding that there were no changed circumstances warranting an exception to the one-year filing deadline should be upheld. But that would still leave the withholding claim. Yes, it would. And it would still leave the asylum claim based on changes with respect to gang activity. Yes, it would. Well, again, with respect to the changed circumstances as they pertain to gang activity, they haven't met their burden of demonstrating that circumstances have changed with respect to gang activity. I know my colleague spoke about an article that he submitted that shows that there's gun, I mean that there's drug violence in Mexico, and I don't think there's any dispute there is drug violence in Mexico. But the critical thing that the Court is looking at here is whether or not the circumstances have changed since 2003, when he last entered, and the time now. And he hasn't identified any record evidence that there's been a change in that regard that was significant enough to warrant a changed circumstances material to his case. Are you also arguing, though, that the Dominguez family can't be a social group under Lynn? But hasn't he demonstrated that his family's membership is a sufficient, strong, discernible bond? Family can be a social group under certain circumstances, but I think the agency was correct in finding here that it wasn't implicated here. He certainly didn't meet his burden of demonstrating it. Why not? Well, first of all, his claim is based on — I think it's important to understand where his claim is coming from and how family group gets swept into this. You know, he came to the United States last in 2003 and didn't apply for asylum until he had various runs with the law. And certainly we understand that, you know, when an alien gets swept up in removal proceedings at that point, they're going to look for various forms of relief from that removal. And so he reaches back with, I think what should be evident from the record, is a pretty weak claim. He's going back 25 years. He's saying that his brother had this problem with the family, and he's sort of incorporating family because he was six or seven years old at the time and it doesn't seem really apparent that he would be persecuted. He's trying to say that the whole family is being swept up in this and trying to get himself into the claim that way. So put yourselves in the shoes of an alien, okay? You're coming to the United States and you're essentially making a claim that there's a bullet in Mexico with my family's name on it. So help us. Our family is being persecuted. What are you going to do to meet your burden of proof to show that that's what's happening, bearing in mind that five of your siblings, who are also members of that group, are in the United States? Well, you're going to bring them in to support your claim and say, yes, our family is being persecuted. Yes, yes, including, I might add, the primary target of the harm his brother saw. So you're going to have them in there to meet your burden of proof to demonstrate your case. But instead, all we have in the record, they didn't come in to testify on his behalf. He didn't submit any affidavits on their behalf. And, in fact, he doesn't allege that any incidents happened to him while he continued to reside in Mexico from the time. You've got two separate issues you're talking about. One is whether he's actually demonstrated persecution, and the other one is whether or not his family is a distinct social group. Why isn't it enough for the second to say that we've got a family feud here? The violence is being directed against people in my family because they belong to my family. Now, you might say you still haven't shown the violence and you haven't shown the persecution, but I'm having trouble separating the merits from this notion of being a separate social group. Well, that really falls to his burden to meet that burden. Under the statute, he has to show that his family's persecution on account of family membership is one central reason for the problems that he's facing. So are you saying he hasn't shown persecution or you haven't shown that he hasn't shown that the alleged persecution was because of family membership? Well, I would say both in this case. There are two findings. There's no past persecution because he was never physically harmed, and there's also not on account of a protected ground, in this case, that family social group wasn't implicated. In fact, if you look at the record ñ Well, there's the intermediate step. Is this a protected family? Is it a family? Right, and the board acknowledges that, yes, in some circumstances, family can. So that's not what's at issue here. The question is whether it's implicated in this case. And I think the record not only doesn't support a claim that the family membership is implicated. I think it pretty much rebuts it. If you look at the letter that he submitted from his sister who ñ that's on page 273 of the record. The sister herself claims that she's met with the family, the Gonzales family. So if family ñ if you're claiming that your family is being persecuted, why are members of your family able to talk with the ñ why is she not being persecuted? Why is the mother who still resides in Mexico not being persecuted? Why was he not persecuted from 1989 after his brother left? I think it sort of exposes the problem in his claim that it's not really a family membership claim. It's his brother had this problem based on a personal vendetta, and he's trying to incorporate family. Or at least you could say that he hasn't met his burden of proof in doing so, which is the basis for the ñ Can I take you back to the timeliness issue for just a moment? Yes. So generally, we don't have jurisdiction to review if ñ whether there's changed country conditions. And if there's a underlying dispute of fact. Well, there's no ñ yes, that's correct. Do you think there's a factual dispute here? Based on changed circumstances? Yeah, changed circumstances. With respect to the family social group, with respect to the claim that he's going to be persecuted on account of the family social group, no. They haven't alleged any changed circumstances, so I don't think there's a factual dispute there. Okay. How about with respect to his claim about the gang being a ñ You mean drug violence in Mexico? Drug violence in Mexico and the fact that he's a returning Mexican male. Well, that has been ñ the board's rationale for that was that he wasn't ñ with respect to the untimeliness, he hasn't pointed to any record evidence. I mean, for today ñ Well, I'm just wondering ñ so then we would have jurisdiction, right, because there's no factual dispute? I would say no, that there's no jurisdiction. Why would you say no ñ why would you say there's no jurisdiction to review that argument? Oh, no. Oh, I'm sorry. If you're referring to the gang membership, yes. Under Husiev and Ramadan, the Court has said that that's sort of a mixed question of fact and law. But ñ As long as there's no real fact ñ true factual dispute, we have jurisdiction.  Correct. With respect to the ñ to the immigration judges and the board's decision, you know, they pretty much went at length here. You know, he didn't present any of the normal things that would help to meet your burden of proof in a case like this. I mean, if your family is there and ñ if you're claiming that you're going to be killed if you're returned to Mexico and you're saying that it's because your family is being targeted, you know, the natural evidence that you would submit is the evidence from your family. Have your family come in and back up your claim. There's nothing like that here. In fact, just with respect to the timeline Your Honor alluded to, and I don't know that it was necessarily answered, there's no indication that after his brother left ñ his brother, who was the primary target of the harm, left in 1989, that he had any more occurrences or run-ins with the family. So he was able to stay there for a decade without any problems. His mother continues to reside there. His sister, who submitted the letter, continues to reside there and is meeting the family without being persecuted. So I think it's easy to see when you look at the evidence here that family is not really implicated in this. It's more of a situation where his brother had a personal grudge and he's trying to find a way to get in on that. When I asked that question, I was trying to focus on the role of the police to the extent we know anything about it. Can you tell me what evidence there is in the record about the role of the police? Well, all we have is his testimony in which he claims that the police did, in fact, assist his family. My colleague had it right that they did put up an electric fence. And he does claim that after that was done that they did shoot at the house or throw rocks and sticks at the house. But there's no allegation that anything like that happens after his brother leaves Mexico in 1989. So there's a huge amount of time, 1989 to 1998 or 1999, when he enters the United States. That's a decade of living in Mexico without any problems with the family. So, again, does that meet his burden of proof? Does the record compel a finding that he's met his burden of proof to show that his family is being targeted in that situation? Let me ask you one more question. The gang violence issue, was that developed in the record below? No, that was – well, I mean, he submitted – He submitted some material. He submitted some background documentation. But the critical thing missing from that documentation is the distinction between the time that he – the one-year time in 2004 when he could last apply for asylum. Well, that's my real question. Was there any evidence of a baseline from which to measure it? There is not. There was some material saying the situation has gotten worse. Well, it's – I mean, in the sense that the materials, he said, it's a worsening situation. Yes. And certainly he hasn't demonstrated that it's in any way material to his claim if there – he says – I know my colleague has mentioned that they said unprecedented. And I don't think there's – I don't think anybody would dispute that gang violence. But the critical situation is – the critical question is, did he meet his burden of demonstrating a change in the baseline that you're talking about? Based on this record, no. Well, that's my question. How much of a change does he have to show? If it's now unprecedented, isn't it worse than it was before? Well, he has to show a change such that it's material to his particular application for asylum. And I think with respect to returnees from Mexico, I think the board has pretty well – excuse me, not the board, this Court has pretty much foreclosed that particular argument in Delgado-Ortiz. This notion that returnees to the United States from Mexico are going to be a group. So there's really not – But wasn't it air for the BIA and the IJ to say that he had to prove physical harm to establish – I'm out of time. Is it all right if I answer? Answer the question. Oh, sure. Was it an error to say that he wasn't physically harmed? To establish past persecution. No, it was not. Understand, this is a – this is an oral decision by the immigration judge. Earlier in the decision, the immigration judge is talking about the threats. I know – I think I know what Your Honor is referencing, that in some circumstances threats without physical harm can – That's the law. It is. But the distinction that – for threats that can constitute persecution versus the distinction of threats that don't constitute persecution is, is there any indication that the threats are going to be followed up on? And in this case, the record demonstrates that the threats weren't really followed up on. Again, he resided in Mexico for 10 years after his brother left without having any problems with the family. So these threats in that circumstance wouldn't meet the law that says the threats can be. And again, I know what you're referencing with the immigration judge's decision where it says, well, he didn't go through physical harm. But the immigration judge is talking about the only claim that he's made, which is that he did receive threats. So the implication there that they're not considering threats, I don't think – I think that's a – would be a stretch to read that into the immigration judge's decision. Okay. So I'm out of time. So thank you very much for the extra time, Your Honors. Thank you. Thank you. Thank you. You have a minute for rebuttal. Thank you. In rebuttal, perhaps the first thing I'd like to emphasize is that I'm going to disagree with government counsel. I believe that after Petitioner's – I think the administrative record shows that after Petitioner's brother Saul left on page 146, the threats came before as well as after Saul left. And so that shows the longstanding disregard that the Gonzales family has against Petitioner's family. And to follow this with the persecution, I believe Your Honor was asking about does physical harm need to be – is that the only basis to meet. I don't believe that's the case. And if we look at the longstanding vehemence by the Gonzales family against Petitioner's family, we see the nature of the threats. We see the manner and means and capability of carrying out the threats. I believe that we can see that it's – the physical component is not the absolute prerequisite to determine whether or not persecution is being met.  Thank you, Your Honor. Thank you.
judges: Paez, Murguia, Hurwitz